UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POKAGON BAND OF POTAWATOMI
INDIANS,

      Plaintiff,                         Case No. 1:22-cv-36

v.                                        Hon. Hala Y. Jarbou

WWW.POKAGON-SECRETS.COM, et al.,

      Defendants.

_____/

## **ORDER**

Plaintiff Pokagon Band of Potawatomi Indians is a "federally recognized Indian tribe with a service area consisting of ten counties in Southwestern Michigan and Northeastern Indiana[.]" (Compl. ¶ 13, ECF No. 1.)  It brings this action against a domain name (www.pokagon-secrets.com), the unknown registrant of that domain name ("John Doe"), the proxy registrant of that domain name, Domains by Proxy, LLC, and the company that hosts a website at that domain name, GoDaddy.com, LLC.  GoDaddy.com and Domains by Proxy are "nominal defendant[s] for purposes of enforcement."  (*Id.* ¶¶ 16, 17.)

Before the Court is Plaintiff's *ex parte* motion for a temporary restraining order (ECF No. 2).  For the reasons herein, the Court will deny the motion.

## I. BACKGROUND

### A. Termination of Jody Osbon

Plaintiff alleges in its verified complaint that it terminated the employment of its Information Technology ("IT") Director and Interim Government Manager, Jody Osbon, on November 8, 2021.  Plaintiff alleges that her authority to "possess, access, or otherwise use confidential information belonging to Plaintiff" ceased on that date.  (*Id.* ¶ 19.) At the time, Osbon

was unhappy and reportedly "made one or more statements referencing information that she could report following her termination."  (*Id. ¶* 20.)

The next day, Osbon sent an email to Steven Rider, Plaintiff's Government Manager, threatening to release information, stating:

> . . . I am sorry for yesterday - you are in no way responsible for the action taken by Tribal Council. If you would like to have a debrief on what my concerns have been - I would be willing to speak with you.  I have the evidence in my possession.
>
> I want to make it perfectly clear that I am not guilty of the allegations against me. I will do everything in my power and use every resource I have in my possession to prove it, and then I will publish my evidence so the truth will be known - I already have the website ready to go live.  I understand that it will not make a difference in my employment status - but the only thing we have is our names, and mine has always stood for good.
>
> I wish you the best and feel sure you will be successful.

(Email, ECF No. 1, PageID.17.)

That same day, Roger Rader, one of Plaintiff's IT employees, resigned his employment with Plaintiff.  Rader's duties included overseeing Plaintiff's website.  Upon his resignation, his authority to control or otherwise access Plaintiff's website ceased.

**B. Pokagon-Secrets.com Website**

On October 18, 2021, John Doe registered the domain name "www.pokagon-secrets.com" (the "Domain Name").  (Compl. ¶ 26.)  Plaintiff became aware of the Domain Name on January 8, 2022, when one of its employees attempted to access a "careers" link on an internal HR page and was redirected to a website at that domain (the "Website").

The Website displays a countdown clock indicating that it will "launch" on Tuesday, January 18, 2022.  (Screenshot, ECF No. 1, PageID.19.)  Also listed on the website are the following terms under the heading "Pokagon Secrets":  "Tribal Elections," "Tribal Council,"

"Corruption & Abuse of Power," "State of Michigan Notary Seal Misuse," and "Office of General Counsel." (*Id.*)

### C. Unauthorized Access to Plaintiff's Servers

Plaintiff has determined that Rader's IT credentials were used to access its website operations about a week before it discovered the Website.  Plaintiff believes that John Doe "accessed and altered" Plaintiff's network and computer systems without authorization in order to obtain and disclose Plaintiff's confidential information.  (Compl. ¶ 40.)

### D. Plaintiff's Claim and Motion

Based on the foregoing, Plaintiff has filed a complaint asserting a claim against John Doe for violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.

Plaintiff asks the Court for a temporary restraining order prohibiting Defendants from doing the following:  (1) publishing the Website, "or any derivative thereof, or any documents or information referenced thereby"; and (2) "using or disclosing any of Plaintiff's confidential, proprietary information or property[.]"  (Proposed Temporary Restraining Order, ECF No. 2-1, PageID.27.)

In addition, Plaintiff seeks expedited discovery.  It requests an order directing Domains by Proxy and GoDaddy.com to provide the identity and contact information of John Doe.  It also asks for permission to subpoena Osbon and Rader for depositions and to require them to respond to interrogatories and to produce documents.

## II. STANDARD

Under Rule 65(b) of the Federal Rules of Civil Procedure, the Court may issue a temporary restraining order ("TRO") without notice only if the Court finds that "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).

3

The Court also considers the following factors when determining whether to grant a TRO:

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a [TRO], (3) whether granting the [TRO] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [TRO].

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  Generally speaking, "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."  *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'  That factor is indispensable[.]"  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019)  (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)) (citations omitted).

Like a preliminary injunction, a TRO "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948 (2d ed. 1995)).

### III. ANALYSIS

**A. TRO**

**1. Likelihood of Success**

Among other things, the CFAA prohibits a person from accessing a "protected computer" without authorization, causing damage or loss.  18 U.S.C. § 1030(a)(5)(C).  It also prohibits intentionally accessing a computer without authorization and thereby obtaining information from a "protected computer."  18 U.S.C. § 1030(a)(2).  A "protected computer" is one that is "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

A person suffering "damage or loss" as a result of a violation of the CFAA can maintain a civil action against a violator to obtain "compensatory damages and injunctive relief," as long as the conduct "involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g) (footnote omitted). Subclause (I) includes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value[.]" 18 U.S.C. § 1030(c)(4)(A)(i)(I). A "loss" means

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]

18 U.S.C. § 1030(e)(11).

Based on the allegations in the complaint, the Court concludes that Plaintiff has established a substantial likelihood of success on its CFAA claim. Its allegations regarding the unauthorized alterations to its internal website, which contained links to the Domain Name and a website threatening to disclose "secrets," suggest that John Doe gained unauthorized access to Plaintiff's computers and obtained information from them, in violation of the CFAA. In addition, Plaintiff alleges that it has incurred costs in excess of $5,000 for "investigating and responding to [John Doe's] threat to divulge documents and/or other information," arguably satisfying the loss requirement in the CFAA. (Compl. ¶ 45.)

### 2. Irreparable Harm

On the other hand, the Court is not persuaded that Plaintiff has made a showing of irreparable harm in the absence of an injunction. To establish irreparable harm, Plaintiff must show that, unless its motion is granted, it "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006);

*Griepentrog*, 945 F.2d at 154 ("[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical.").

Plaintiff asserts that it is worried about the disclosure of its "confidential information." Disclosure of confidential information can cause irreparable harm in some circumstances, but Plaintiff has not identified the nature of the information at issue.  Indeed, it is not clear what information will be published on the Website.  Thus, any professed harm is too speculative to support an injunction.

Moreover, as Plaintiff acknowledges, this case is "relatively unique" in that it involves "confidential information pertaining to official government business of a sovereign nation[.]" (Pl.'s Br. in Supp. of Mot. for TRO 8, ECF No. 3.)  In other words, this case is not like those in which courts have found that damage to a business's reputation could threaten irreparable harm due to loss of customer goodwill.  *See, e.g.*, *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001); *Basicomputer v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).  Plaintiff is not a business, and it supplies no evidence indicating that it depends upon its reputation and public goodwill for its existence in the same way that a business does.

Because the irreparable harm factor is "indispensable," Plaintiff's failure to satisfy this factor precludes it from obtaining a TRO.

### 3. Harm to Defendants

Even if Plaintiff had demonstrated irreparable harm, its request faces another hurdle. Plaintiff asserts that the injunction will not harm Defendants.  In this, Plaintiff is mistaken. Plaintiff seeks an order that will prevent John Doe from publishing information about Plaintiff, yet Plaintiff fails to reckon with the fact that such an injunction threatens Doe's First Amendment rights.  The Supreme Court repeatedly has recognized that an "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment

6

rights." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418 (1971) (citing *Near v. Minnesota*, 283 U.S. 697 (1931)); *accord Alexander v. United States*, 509 U.S. 544, 550 (1993) ("Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.").

Prior restraints bear "a 'heavy presumption' against [their] constitutional validity." *Id.* Indeed, they "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "'[I]n the case of a prior restraint on pure speech, . . . publication must threaten an interest more fundamental than the First Amendment itself.'" *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002) (quoting *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996)). Thus, prior restraints are improper even where the information sought to be restrained was obtained in violation of law. *See Procter & Gamble*, 78 F.3d at 225; *In re King World Prods., Inc.*, 898 F.2d 56, 59 (6th Cir. 1990) ("No matter how inappropriate the acquisition, or its correctness, the right to disseminate that information is what the Constitution intended to protect."). They are also improper as a means to temporarily preserve the status quo because they are "'an immediate and irreversible sanction.'" *Id.* at 226 (quoting *In re King World Prods.*, 898 F.2d at 60).

Plaintiff's motion addresses none of these concerns; thus, the Court is not persuaded that there will be no harm in the absence of an injunction. This factor weighs against a TRO.

### 4. Public Interest

Although the public has a general interest in protecting confidential information, it has a much greater interest in protecting constitutional rights. *See Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir. 2004) (noting that "the public interest is served by preventing the violation of constitutional rights"). Thus, this factor also weighs against granting a TRO.

In short, Plaintiff has not met its burden of demonstrating that a TRO is warranted.

**B. Expedited Discovery**

Finally, the Court is not persuaded that expedited discovery, obtained through *ex parte* orders requiring disclosure of information, is warranted.  Plaintiff is free to use the traditional tools of discovery, including subpoenas, to obtain the information it seeks from Defendants GoDaddy.com and Domains by Proxy, as well as Osbon and Rader.  Those tools will give the other parties an opportunity to respond to such requests.

Accordingly,

**IT IS ORDERED** that Plaintiff's Ex Parte Motion for a Temporary Restraining Order (ECF No. 2) is **DENIED**.

Dated:   January 14, 2022                                    /s/ Hala Y. Jarbou
                                                                            HALA Y. JARBOU
                                                                            UNITED STATES DISTRICT JUDGE